```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SEA TRADE COMPANY LTD., TRADEWINDS   :
ENTERPRISE (JERSEY) LTD., ROBINSON   :
FLETAMENTOS, S.A., AGENCIA           :
MARITIMA ROBINSON, S.A.C.F.I.,       :  03 Civ. 10254(JFK)
NANI SHIPPING CORP. LTD., and        :  MEMORANDUM OPINION
ADROGUE CHICO, S.A.,                 :       AND ORDER
                                     :
                    Plaintiffs,      :
                                     :
         – against –                 :
                                     :
FLEETBOSTON FINANCIAL CORP.,         :
                                     :
                    Defendant.       :
------------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

Plaintiffs Nani Shipping Corporation, Ltd. ("Nani") and Adrogue Chico, S.A. (collectively, "Plaintiffs") move to compel Defendant ("FleetBoston") to produce discovery responsive to their Document Request Nos. 5, 6, 8, 9, 10, 11, 14, 16, 20, 21, 22 (the "Requests").[1]

Plaintiffs' breach of contract claim is the only remaining claim in this case. The Court already dismissed the other claim against FleetBoston on statute of frauds grounds. See Sea Trade Co. v. FleetBoston Fin. Corp., No. 03 Civ. 10254(JFK), 2004 WL 2029399 (S.D.N.Y. Sept. 9, 2004). The facts of this case are set out in that prior Order, see id. at *1-3, and the Court presumes familiarity with them. To summarize briefly, Plaintiffs allege that in March 1997 one of Nani's

---

[1] FleetBoston has moved for leave to file a proposed amended complaint and counterclaim. The motion is not yet fully briefed.

account holders entered into an oral agreement ("Agreement") with Ricardo Carrasco, a loan officer with BankBoston Corporation ("BankBoston"), FleetBoston's predecessor in interest.  This purported Agreement permitted Nani to overdraw its bank account by up to $1,500,000 USD without collateral or security.[2]  In February 1998, Carrasco disappeared when BankBoston began to suspect that he was diverting assets.  BankBoston then froze all accounts for which Carrasco had served as primary loan officer.  Plaintiffs contend that BankBoston refused to reinstate overdraft privileges on Nani's account but reinstated privileges on other accounts.

Plaintiffs' Requests seek information or documents concerning former plaintiff Sea Trade Company, Limited ("Sea Trade"), which had an account with BankBoston.  Plaintiffs also seek discovery from third-party and former clients of BankBoston.  Despite the broad relevance standard in Fed. R. Civ. P. 26(b)(1), see, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) ("This obviously broad rule is liberally construed"), the Court is not inclined to grant Plaintiffs' requests.  Carrasco's handling of other accounts, including the Sea Trade account, is irrelevant to the issue of whether he extended overdraft privileges to the Nani account.  Plaintiffs

---

[2] The Nani account holder, Ricardo Gaston Cazou, testified as to the existence of the Agreement at deposition. (Pl. Mem. of Law, Ex. B.)

2

urge that Carrasco's course of dealing with the Sea Trade account informed Nani's understanding in coming to the oral Agreement with Carrasco. (Pl. Mem. of Law at 10.)  Even if it did, this information does not bring Plaintiffs closer to establishing the existence of the Agreement.

Plaintiffs contend that information concerning the third party accounts is relevant because it would support the claim that BankBoston was aware of, and tolerated, Carrasco's practices, thereby giving customers such as Nani and Sea Trade a false sense of security.  BankBoston's summary suspension of Nani's overdrafts after Carrasco's disappearance, so the argument goes, was a violation of good faith and fair dealing. (Pl. Mem. of Law at 11-12.)  Even if the Agreement existed, BankBoston's treatment of other customers has no bearing on BankBoston's alleged Agreement with Plaintiffs.  Moreover, Plaintiffs' argument files in the face of the written Terms and Conditions ("Terms") that BankBoston distributed to all account holders.[3]  The Terms expressly provide that BankBoston had no obligation to allow overdrafts and could require payment of the overdraft plus interest at any time. (Koren Decl., Ex. G, at 25)  Under New York law, the implied duty of good faith and fair dealing does not

---

[3] Joan Duarte, the operations manager for BankBoston at the relevant time, testified at deposition that Nani, as an account holder with BankBoston, would have received a copy of the Terms. (Koren Decl., Ex. C, at 160-61.)

3

create an obligation independent of the contract, and "[n]o obligation can be implied . . . which would be inconsistent with other terms of the contractual relationship." <u>Murphy v. Am. Home Prods. Corp.</u>, 58 N.Y.2d 293, 304 (1983).

In light of the foregoing, Plaintiffs' motion to compel discovery is denied.

SO ORDERED.

Dated:   New York, New York
         August 28, 2006

                                                  _____
                                                  JOHN F. KEENAN
                                                  United States District Judge