```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
SEA TRADE COMPANY LTD., TRADEWINDS  :
ENTERPRISE (JERSEY) LTD., ROBINSON  :
FLETAMENTOS, S.A., AGENCIA          :
MARITIMA ROBINSON, S.A.C.F.I.,      :   03 Civ. 10254(JFK)
NANI SHIPPING CORP. LTD., and       :   MEMORANDUM OPINION
ADROGUE CHICO, S.A.,                :        AND ORDER
                                    :
                 Plaintiffs,        :
                                    :
         – against –                :
                                    :
FLEETBOSTON FINANCIAL CORP.,        :
                                    :
                 Defendant.         :
-----------------------------------X
-----------------------------------X
FLEETBOSTON FINANCIAL CORP.,        :
          Counter Claimant          :
                                    :
         – against –                :
                                    :
NANI SHIPPING CORP. LTD.,           :
          Counter Defendant         :
-----------------------------------X
```

**JOHN F. KEENAN, United States District Judge**:

      Defendant-Counterclaimant FleetBoston Financial Corp. ("FleetBoston") seeks an order requiring Plaintiff-Counterdefendant Nani Shipping Corp. Ltd. ("Nani") and Plaintiff Adrogue Chico, S.A. ("Adrogue Chico", and collectively, "Plaintiffs") to post security prior to judgment (i) for costs, pursuant to Local Rule 54.2, and (ii) for the judgment that FleetBoston expects to obtain on its counterclaim. For the reasons that follow, FleetBoston's request for an order directing Plaintiffs to post a bond as security for costs is granted.

FleetBoston's application for an attachment as security for an eventual judgment on its counterclaim is denied.

The facts of this case are set forth in detail in a prior decision of the Court, see Sea Trade Co. v. FleetBoston Fin. Corp., No. 03 Civ. 10254 (JFK), 2007 U.S. Dist. LEXIS 32167 (S.D.N.Y. May 1, 2007), and familiarity is assumed. In brief, Plaintiffs claim that, in 1991, Ricardo Carrasco, a former employee of FleetBoston's predecessor, BankBoston Corporation ("BankBoston"), concluded an oral agreement with Nani's principals that allegedly entitled Nani to overdraw its BankBoston checking account in an amount up to $1.5 million in order to fund Adrogue Chico, an Argentinian land development project. Nani subsequently overdrew its account in the amount of approximately $780,000 but failed to remit payments on the outstanding overdraft balance. In 1998, after Carrasco disappeared, BankBoston froze Nani's account and suspended its overdraft privileges. In December, 2003, Plaintiffs brought this action for breach of contract, alleging that BankBoston's suspension of overdraft privileges constituted a violation of the oral agreement made between Carrasco and Nani and resulted in damages to the plaintiffs of approximately $7.2 million in lost real estate profits. In September, 2006, after obtaining leave to file an amended answer and counterclaim, FleetBoston asserted its counterclaim for breach of contract, seeking to recover

2

approximately $780,000 in outstanding overdrafts, plus interest and attorneys' fees and costs.

FleetBoston now moves for an order directing Plaintiffs to post a bond as security for costs, pursuant to Local Civil Rule 54.2, because Plaintiffs are foreign corporations that have no assets or presence in the United States and have no apparent ability to pay the costs of litigation or any judgment that is entered against them. FleetBoston also requests that the Court exercise its broad inherent equitable power to order Plaintiffs to post security to support the eventual judgment that FleetBoston expects to obtain on its counterclaim.

**DISCUSSION**

*(i) Requirement of a Bond under Local Rule 54.2*

Rule 54.2 of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York provides ("Rule 54.2") that "[t]he court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." In the event that a party fails to post bond as directed, "the court may make such orders in regard to noncompliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the

action or rendering a judgment by default against the noncomplying party." Rule 54.2.  Courts may consider the following factors when determining whether to require a bond under Rule 54.2:  "(1) the financial condition and ability to pay of the party who would post the bond, (2) whether the party is a non-resident or foreign corporation, (3) the merits of the underlying claims, (4) the extent and scope of discovery, (5) the legal costs expected to be incurred, and (6) compliance with past court orders."  RLS Assocs., LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).  "The district court's bond determination is an exercise with equitable as well as legal implications." Id. (internal quotation marks and citation omitted).

Two factors weigh heavily in favor of requiring Plaintiffs to post a bond.  First, Plaintiffs do not appear to have the ability to pay.  Nani is a shell corporation without assets and Adrogue Chico is "a bankrupt corporation whose sole asset (which is located in Argentina) is the subject of a lien." (Def. Mem. at 8.)  Plaintiffs concede that "Adrogue Chico has filed for bankruptcy protection in Argentina and Nani Shipping does not have the financial wherewithal to post security for the Bank's counterclaim." (Pl. Mem. at 8.) Plaintiffs' lack of assets is itself sufficient to warrant attachment of costs under Rule

4

54.2. See Atlanta Shipping Corp. v. Chemical Bank, 631 F. Supp. 335, 353 (S.D.N.Y. 1986) (stating that foreign plaintiff's "lack of assets and status as a debtor in bankruptcy counsels us to require it to post a bond as security for costs").

Second, the plaintiffs are foreign corporations: Nani is a Bahamian company, and Adrogue Chico is an Argentinian company. Neither plaintiff conducts business nor has any assets in the United States. Plaintiffs' status as foreign corporations counsels in favor of requiring them to post a bond as security for costs. See Knight v. H.E. Yerkes and Assoc., Inc., 675 F. Supp. 139, 142 (S.D.N.Y. 1987) (requiring plaintiff to post bond for costs because plaintiff was resident of Thailand).

Plaintiffs argue that other factors weigh against granting FleetBoston's request for security. Specifically, Plaintiffs contend that their breach of contract claim is meritorius and that they have no history of failing to comply with orders of the Court. Plaintiffs also assert that FleetBoston has sufficient presence and resources to bring an action for enforcement of an eventual judgment against Adrogue Chico in Argentina and thus has no need for the security it seeks. Finally, Plaintiffs argue that they "would not have funds to post a bond resulting in the likely forced abandonment of a legitimate claim." (Pl. Mem. at 9.)

5

The Court need not inquire into the merits of Plaintiffs' claims or FleetBoston's apparent need for the attachment. As FleetBoston correctly notes, courts have held that "a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2." RLS Assocs., 464 F. Supp. 2d at 221; see also Atlanta Shipping Corp., 631 F. Supp. at 353. Thus, the fact that Plaintiffs' claims may have merit and Plaintiffs have no history of non-compliance with Court orders does not preclude the Court from exercising its discretion to require Plaintiffs , as foreign corporations without the apparent ability to pay costs or judgment, to post a bond as security for costs.[1] Further, despite Plaintiffs'

---

[1] I also note that, to the extent that the merits of Plaintiffs' claims should be considered as a factor in determining whether Plaintiffs must post a bond, those claims are not so meritorius as to weigh against requiring Plaintiffs to post a bond. Plaintiffs' lawsuit rests on an alleged oral contract entered into seventeen years ago, in which the defendant's larcenous former employee purportedly promised the Plaintiffs' principals that BankBoston would provide Nani with up to $1.5 million in non-recourse financing to fund a highly speculative foreign land development deal. For Plaintiffs to prevail on its claims, a jury must believe, among other things, that it is more likely than not that BankBoston agreed to give Nani a $1.5 million line of credit without obtaining collateral, personal guarantees, or any form of financial documentation from its borrowers. Plaintiffs have presented no evidence of the existence of the alleged oral agreement, apart from the deposition testimony of the principals. Ricardo Carrasco, the BankBoston employee who allegedly entered into the oral agreement on BankBoston's behalf, disappeared under a cloud of suspicion and has been missing for nearly a decade. In sum, although the plaintiffs' claims survived summary judgment, they do not inspire

6

protest that their inability to post a bond would force them to abandon their lawsuit, it is premature for the Court to decide whether Plaintiffs' lack of ability to pay should result in the dismissal of their claims. Before a defendant moves for dismissal of claims under Rule 54.2, the plaintiff first must fail to post the bond as directed by the court. Even after the plaintiff fails to post the bond, a court must first give "adequate consideration to the plaintiffs' alleged inability to pay" before determining whether the plaintiffs' failure to post the bond should result in dismissal of claims pursuant to Rule 54.2 <u>RLS Assocs.</u>, 464 F. Supp. 2d at 209 (citing <u>Selletti v. Carey</u>, 173 F.3d 104 (2d Cir. 1999)). Here, the Court has not yet ordered the posting of a bond and Plaintiffs thus have not had the opportunity to comply with the Court's order. In the event that Plaintiffs fail to post the required bond, FleetBoston may move for dismissal of Plaintiffs' claims or any other remedy provided by Rule 54.2. At that time, the Court may consider evidence relating to the ability of Plaintiffs, or of Plaintiffs' principals, to post a bond, and rule accordingly. <u>See</u> <u>Selletti</u>, 173 F.3d at 111 n.3 ("[I]f a court sets an amount that proves to exceed the party's ability to pay, the court retains the option of accepting partial or periodic payment, or rescinding the obligation altogether, rather than dismissing the suit."). Thus,

---

much confidence.

7

the question of whether Plaintiffs are able to post the required bond will be addressed, if at all, by future proceedings.

In sum, I find that it is appropriate to order Plaintiffs to post a bond, pursuant to Rule 54.2, as security for costs. I turn next to the appropriate amount of the bond.

"The district court enjoys considerable discretion in setting a bond amount under Rule 54.2." RLS Assocs., 464 F. Supp. 2d at 221 (citing Rule 54.2). "[A] court should not impose a bond that a party is unable to pay. Subject to this requirement, the amount of the bond lies within the district court's discretion, informed by both legal and equitable considerations." Id. at 221-22.

FleetBoston asks that Plaintiffs be directed to post a bond in the amount of $14,100. A bond in this amount will secure the costs of: "approximately $5,400 in recoverable costs for five deposition transcripts" that FleetBoston has used in its motion for summary judgment or may use in a future dispositive motion or at trial; an additional $5,000 that FleetBoston expects to spend on the depositions of the five named expert witnesses in this case; and approximately $3,800 in costs for interpreters for depositions, daily trial transcripts, and in-court interpreting services. (Def. Mem. at 9.) Apart from implying that an order requiring Plaintiffs to post a bond of $14,100 could force them to discontinue the litigation, Plaintiffs do not challenge the

8

amount of the bond sought by FleetBoston.  I find that the amount of security sought by FleetBoston is reasonable.  Accordingly, Plaintiffs are ordered to post a bond for costs, in a form acceptable to the Court, in the amount of $14,100, within thirty (30) days of the entry of this Order.

*(ii) Requirement of a Bond as Security for a Judgment*

FleetBoston requests that the Court order Plaintiffs "to post some security to support an eventual judgment in [FleetBoston's] favor." (Def. Mem. at 10.)  FleetBoston concedes that there is no authority that expressly authorizes the grant of pre-judgment attachment in aid of security under the facts of this case.  Nevertheless, FleetBoston argues, the inherent equitable power of the Court to manage its affairs permits the granting of such an attachment.

Plaintiffs argue that "[p]rejudgment security is a clearly and narrowly defined remedy, not jurisprudentially crafted." (Pl. Mem. at 5.)  In the absence of a specific statute allowing for pre-judgment security under a set of narrowly defined circumstances, Plaintiffs contend that the "general rule is that a party may not seek security for a claim that has not been reduced to judgment." Id. at 6.

Plaintiffs' point is well taken. There is simply no authority that permits FleetBoston to attach the property of the

9

plaintiffs, prior to the issuance of a judgment, in aid of security for FleetBoston's claim for money damages. Despite acknowledging the absence of statutory authority for its request, FleetBoston nevertheless persists in arguing that, under section 6201(1) of New York's Civil Procedure Law and Rules, "the fact that the Plaintiffs are foreign corporations provides sufficient grounds to attach any assets found here." (Def. Mem. at 11.) FleetBoston's reliance on section 6201(1) is misplaced. The express conditions that must be satisfied in order for a grant of pre-judgment attachment to issue under section 6201(1) are not met in this case. Section 6201(1) provides, in relevant part, that an order of attachment may be granted when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. CPLR § 6201(1). Section 6212 further requires that a plaintiff who seeks a pre-judgment attachment under section 6201 show "[1] that there is a cause of action, [2] that it is probable that plaintiff will succeed on the merits . . . and [3] <u>that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff</u>." N.Y. CPLR § 6212(a) (emphasis added). The provisional remedy of attachment is "a harsh remedy which should be construed strictly against those seeking to use it" and is "discretionary with the trial court." <u>Reading & Bates Corp. v. Nat'l Iranian Oil Co.</u>, 478 F. Supp. 724, 726 (S.D.N.Y. 1976)

(citations omitted). Here, FleetBoston's claim for damages in the amount of approximately $780,000 clearly does not exceed Plaintiffs' opposing claim for damages of $7.2 million. Thus, FleetBoston has failed to meet the statutory requirements for attachment under New York. Apart from its inapposite reference to section 6201(1), FleetBoston cites to no other federal or New York state statute that permits the pre-judgment attachment it seeks. Accordingly, FleetBoston's request for an order granting pre-judgment attachment as security for an eventual judgment in its favor must be denied.

## CONCLUSION

FleetBoston's request for an order directing Plaintiffs to post a bond as security for costs, pursuant to Local Rule 54.2, is GRANTED. Plaintiffs shall post a bond, in a form acceptable to the Court, in the amount of $14,100 within thirty (30) days of the entry of this Order. FleetBoston's request for an order directing Plaintiff to provide security in aid of an eventual judgment in FleetBoston's favor on its counterclaim is DENIED.

SO ORDERED

DATED: New York, New York
January 15, 2008

*John F. Keenan*

JOHN F. KEENAN
United States District Judge